COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Annunziata and
          Senior Judge Coleman
Argued at Richmond, Virginia


W. BRYAN SETTLE
                                        MEMORANDUM OPINION* BY
v.    Record No. 0935-01-2              JUDGE ROSEMARIE ANNUNZIATA
                                              FEBRUARY 26, 2002
GERALDINE H. SETTLE


            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                   Catherine C. Hammond, Judge

          T. Lee Brown, Jr. (Parker, Pollard & Brown,
          P.C., on brief), for appellant.

          Rose McC. Alexander for appellee.


     On March 7, 2001, the trial court awarded W. Bryan Settle

(husband) and Geraldine H. Settle (wife) a no-fault divorce,

pursuant to Code § 20-91(A)(9)(a).  Husband appeals the trial

court's award of spousal support and attorney's fees to wife,

and its allocation of marital property.  For the reasons that

follow, we affirm the decision of the trial court.

                              I.

                          Background

     The parties were married on December 24, 1985.  During the

marriage, wife had at least five employers.  She missed some

months of employment during her pregnancy and the infancy of the

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

parties' third child. As a result, she lost opportunities for advancement. During this period, husband did not make payments on the marital debt in wife's name and that debt fell substantially behind.

The parties separated in August 1999. Husband did not pay any child or spousal support until November 1999. On August 10, 2000, wife filed for bankruptcy because husband stopped paying some of the joint debts of the parties.

Husband remained at the same employer for 12 years. His gross annual earned income was approximately $46,900 per year. During the parties' separation, husband incurred loans from his 401(k) plan and finance companies to pay joint marital debts and child support. He also voluntarily contributed pre-tax dollars to his 401(k) account.

On September 3, 1999, husband filed for divorce. The circuit court held three hearings in this divorce case. On June 5, 2000, it heard evidence related to custody matters. On August 14, 2000, it heard evidence on child support and temporary spousal support. On November 3, 2000, it considered evidence related to equitable distribution.

At the third hearing, the trial court determined that wife did not desert husband. In reaching its decision, the court considered evidence admitted during the earlier hearings on custody and support, noting that "there was quite a bit of testimony [at those hearings] about the reason for the

separation and conflict that existed in the family and in the marriage."[1] The trial court "accept[ed] the testimony of Ms. Settle [from the earlier hearings] . . . [that she] was very frightened of [her] husband, and that she left because it was an intolerable conflict . . . ." The trial judge declined to hear additional testimony from husband and his corroborative witness, finding that husband had already testified regarding the issue of fault and that the testimony of husband's corroborative witness, as proffered, would not add anything to the evidence already presented. The trial court concluded "that there is insufficient evidence for a fault divorce."

The trial court found that the net equity in the marital residence was $16,000 and awarded the marital home to husband. Husband suggested that, in lieu of ordering him to pay wife $8,000 in equity, the court require him to pay additional amounts of their marital debt.

The court ordered the wife to pay marital debts to Associates National ($7,342) and Chase Bank ($3,384), totaling

---

[1] At those earlier hearings, testimony of Hank Mitchell, Mary Farrell and Sharon Johnson corroborated wife's fright of husband and the "intolerable" situation. Mitchell testified that she observed wife crying during and after speaking with husband on the telephone. Farrell testified that she did not permit her daughters to play with the Settles' daughters because "[Mr. Settle] was always yelling." Johnson testified that in the summer of 1998, wife had told her that she wanted to leave husband. In addition, as the trial judge noted, wife testified that she left her husband because she was "frightened" of him and the situation was "intolerable."

$10,726. It ordered husband to pay the following marital debts, totaling $25,284: Bank of America 401(k) loan ($10,185); Washington Mutual ($4,923); Beneficial Finance ($3,714); Capital One ($3,218); and Crestar ($3,244).

The trial court also ordered husband to pay $300 per month in permanent spousal support, stating that it had considered all of the relevant factors of Code § 20-107.1 and cited the following reasons for its award:

> (i) [wife] is setting up a new home; (ii) she makes $7,000 less per year than [husband]; (iii) she contributed the majority of the child care responsibilities post-separation; and (iv) she contributed a great deal to the division of labor in the household pre-separation.

From the bench, the trial judge noted that she "[c]onsider[ed] the duration of the marriage and the relative positions of the parties, especially the need of Mrs. Settle," as well as "the fact that [husband] was going to keep the house." The trial court also ordered husband to pay $1,000 of wife's attorney's fees.

## II.

## Analysis

Husband alleges that the trial court erred by: (1) determining the issue of fault solely from evidence admitted at the hearings regarding custody and child support; (2) refusing to admit husband's evidence regarding fault; (3) inequitably allocating all of the parties' marital debt to him; (4) failing

- 4 -

to consider all the statutory factors in awarding wife permanent spousal support; and (5) ordering him to pay a portion of wife's attorney's fees despite his alleged inability to pay the ordered spousal support. Finding each of these allegations to be without merit, we affirm the trial court's decision.

### A. Trial Court's Determination of Fault

In reaching its decision that there was no marital fault in this case, the trial court considered testimony from the equitable distribution hearing, as well as the earlier hearings on custody, child support and temporary spousal support. Nevertheless, husband contends the trial court erred by: (1) basing its determination on marital fault solely on notes from the two earlier hearings; (2) its refusal to hear additional evidence from husband on the issue of fault; and (3) crediting wife's testimony that she was frightened of him and left because the conflict was intolerable. We disagree.

First, we do not consider husband's contention that the trial court improperly considered evidence from the first two hearings because he made no objection below. Rule 5A:18.

Second, we find no error in the trial court's refusal to hear husband's testimony on the issue of desertion. Because husband did not proffer his expected testimony, we cannot, on appeal, conclude that his testimony would have been relevant to the issue of wife's intent in leaving the marital abode. See Lockhart v. Commonwealth, 34 Va. App. 329, 340, 542 S.E.2d 1, 6

(2001) ("[P]arty must proffer or avouch the evidence for the record in order to preserve the ruling for appeal; otherwise, the appellate court has no basis to decide whether the evidence was admissible." (internal quotation and citation omitted)).

Likewise, we find that the trial court properly declined to hear the testimony of husband's witness because, as proffered, her testimony was not admissible on the issue of desertion.

> The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion. Evidence is admissible if it tends to prove a matter that is properly at issue in the case . . . .

Blain v. Commonwealth, 7 Va. App. 10, 16-17, 317 S.E.2d 838, 842 (1988) (citations omitted). Where a spouse alleges desertion by a former spouse, the spouse must demonstrate an "'actual breaking off of the marital cohabitation'" and "'an intent to desert in the mind of the offender.'" Zinkhan v. Zinkhan, 2 Va. App. 200, 205, 342 S.E.2d 658, 660 (1986) (quoting Nash v. Nash, 200 Va. 890, 893, 108 S.E.2d 350, 352 (1959)). Where the trial court finds that a spouse is justified in leaving the marital abode, it may not grant the other spouse a divorce on the ground of desertion. Kerr v. Kerr, 6 Va. App. 620, 623, 371 S.E.2d 30, 32 (1988) (citing Graham v. Graham, 210 Va. 608, 616, 172 S.E.2d 724, 730 (1970)); Brawand v. Brawand, 1 Va. App. 305, 310, 338 S.E.2d 651, 653 (1986).

- 6 -

In this case, the trial court ruled that wife was justified in leaving the marital home, finding that she was "very frightened" of him and the situation was intolerable. Because such justification is determinative on the issue of desertion, only evidence that tends to prove or disprove wife's justification is relevant and admissible on the issue of desertion.[2]

Husband proffered that his witness would testify that he had been surprised and upset when his wife left him.[3] In ascertaining wife's state of mind when she left the marital home, evidence of husband's reaction is irrelevant. In short, because husband did not demonstrate that his proposed evidence tended to prove that wife intended to desert him, the trial court did not abuse its discretion by refusing to admit it into evidence.

Finally, we find no merit in husband's contention that the trial court abused its discretion by crediting wife's uncorroborated testimony. Several witnesses corroborated wife's contention that she was frightened and left the marriage due to

_____

[2] The issue of physical separation of the parties was not before the court because the parties agreed that they did not cohabitate after their separation. Therefore, the only matter properly at issue regarding desertion is wife's intent. See Kerr, 6 Va. App. at 623, 371 S.E.2d at 32 (noting that legal justification rebuts the intent to desert).

[3] Husband also proffered that Nancy Graham would testify that the couple was separated continuously. Because this fact was not in dispute, testimony on this issue is irrelevant.

- 7 -

the intolerable conflict.  Consequently, we will not disturb the court's decision on this issue.

### B.  Allocation of Marital Debts

Husband contends that the trial court erred in allocating all of the parties' joint marital debt to him.

> In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case.  A decision regarding equitable distribution . . . will not be reversed unless it is plainly wrong or without evidence to support it.

Gilman v. Gilman, 32 Va. App. 104, 115, 526 S.E.2d 763, 768 (2000) (internal citations and quotations omitted).  Accordingly, we find no merit in husband's contention.

First, we note that the trial court did not allocate all of the marital debt to husband.  In making this statement, husband ignores the portion of the court's order requiring wife to pay $7,342 in marital debt to Associates National and $3,384 in marital debt to Chase.[4]  Second, husband fails to articulate his

---

[4] Although the trial court did not specify its classification of these debts in its order, referring ambiguously to these debts as the "debts in [wife's] name" it had earlier ruled that "[the debts to Associates National and Chase are] marital debt. . . . There's no question about [their] classification whatsoever."  See Richmond Dept. of Soc'l Servs. v. Carter, 28 Va. App. 494, 496, 507 S.E.2d 87, 88 (1998) (construing ambiguous language of court's order in light of the record).  Husband does not appeal this classification, nor did he object to it before the trial court.

basis for claiming that the court's assignment of more than half of the marital debt to him is inequitable, and we cannot discern one.  See Moran v. Moran, 29 Va. App. 408, 417-18, 512 S.E.2d 834, 838 (1999) (finding no abuse of discretion in allocation of 52% of marital debt to husband).  Husband ignores the various equities balanced by the trial court in making its distribution, including its award of the marital home, which had $16,000 in equity, to husband.  While the trial court allocated $25,284 of the marital debt to husband and only $10,726 to wife, it did not require him to pay wife her share of the equity in the marital home.  Indeed, husband asked the court to allocate a greater share of the marital debt to him in lieu of awarding wife her share of the equity in the marital home.  Accordingly, we cannot say that the court abused its discretion in its assignment of marital debt.

### C.  Award of Permanent Spousal Support

#### i.  Statutory Factors

In determining spousal support, the trial court must consider all statutory factors.  See Code § 20-107.1(E). Husband contends that the trial court did not consider his inability to pay, the parties' contributions to the well-being of the family, and the circumstances and factors contributing to the dissolution of the marriage and any grounds for divorce. See Code § 20-107.1(E),(E)(1), and (E)(6).  He bases his conclusion on the absence of factual findings on each factor in

the record.  He also claims that the trial court improperly cited wife's share of the child care responsibilities in making its determination.

We find no merit in husband's contentions.  First, he errs in arguing that the trial court must make findings as to each factor.  See Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 427 (1986) (holding that trial court is not required "to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors").  Rather, the court's determination to award spousal support, and the amount, "must have some foundation based on the evidence presented." Id.  In this case, the trial court's order clearly states that it considered all of the factors of Code § 20-107.1 and specifically identified four factors that it had given particular weight in its decision.  Moreover, in explaining her decision, the trial judge noted that while "there were some factors that stood out[,] [t]hat does not mean that I didn't consider all the factors . . . ."

Second, the record demonstrates that the court considered the circumstances and factors contributing to the dissolution of the marriage and any grounds for divorce, evidence of husband's ability to pay spousal support, and the parties' contributions to the well-being of the family.  During the trial, the judge stated that she heard "quite a bit of testimony about the reason for the separation and conflict that existed in the family and

in the marriage."  She also stated that "[husband's] ability to pay [and] the fact that he was going to keep the house had a bearing [on her decision to award $300 per month in spousal support to wife]," and her order notes that "[wife] makes $7,000 less per year than [husband]."

The court's order also stated that it awarded spousal support, in part, because "[wife] contributed the majority of the child care responsibilities post-separation . . . [as well as] a great deal to the division of labor in the household pre-separation."  While husband contends that the court's reliance on wife's child care responsibilities in awarding spousal support is error, he cites no legal authority in support of that contention, and we find none.  Moreover, childrearing is a non-monetary contribution to the well being of the family.

### ii.  Sufficiency of the Evidence

Husband also claims that wife failed to demonstrate need. He argues that the evidence proved and the judge recognized that wife did not have need because her expenses were approximately equal to her income.  We disagree.

The evidence supports the court's findings that, despite the fact that wife's statement of expenses was "not too far off of what her income is," wife was in need, and husband was able to pay $300 per month in support.  Husband earns $47,000 per year, makes weekly contributions to his retirement fund, owns two cars and a house, and spends $425 per month for food, plus

$50 per month for lunch.[5]  In contrast, wife earns $40,000 per year, has no assets, owns one car and no home, was setting up a new home, and spends $600 per month on groceries for herself and her three children.  The trial court, therefore, did not err in concluding that wife was in need and husband was able to pay.

In sum, we hold that "[the court's] decision [to award $300 per month in spousal support to wife] was supported by the evidence relevant to [the] factors [enumerated in Code § 20-107.1(E)]."  Woolley, 3 Va. App. at 345, 349 S.E.2d at 427. Finding no abuse of discretion, we affirm the support award.

### D.  Attorney's Fees

Husband contends that the court abused its discretion in awarding wife counsel fees because: (1) he is unable to meet the obligation; and (2) the trial court's motive for making the award was improper.  We disagree.

An award of attorney's fees is within the sound discretion of the trial court.  Wilkerson v. Wilkerson, 214 Va. 395, 398, 200 S.E.2d 581, 584 (1973).  As noted in subsection C of this opinion, the record supports the trial court's finding that husband has an ability to meet wife's financial needs. Consequently, his claim that the court erred by awarding wife a portion of her counsel fees is without merit.

---

[5] While husband presented evidence that his expenses exceeded his income, the trial court was not required to accept this testimony.  See Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

Additionally, husband offers no evidence to support his contention that the trial court awarded counsel fees because wife's bankruptcy eliminated wife's debt to counsel. Indeed, the bankruptcy plan admitted at trial indicates that all unsecured creditors would receive approximately 100% of the present value of their allowed claims from the trustee. Accordingly, we affirm the court's award of $1,000 of wife's attorney's fees.

For the foregoing reasons, the decision of the trial court is affirmed[6].

Affirmed.

---

[6] The Court grants appellee's motion to include the statement of facts as an addendum to the appendix in this case.